### 3893.   CAGE v. THE STATE.

While there was no direct evidence of a sale of intoxicating liquor, there were circumstances proved from which the jury had a right to infer that such a sale was made by the accused, either for cash or on credit.

DECIDED JULY 10, 1912.

Accusation of sale of liquor; from city court of Newnan—Judge Post. December 1, 1911.

*W. G. Post,* for plaintiff in error.

*W. L. Stallings, solicitor,* contra.

POTTLE, J. The accused was seen by the State's witness coming through a cotton patch on a dark night, carrying a lantern. He reached a somewhat secluded spot where one Arnold and three other negroes were sitting on the ground. The accused pulled out of his pocket three pints of whisky and handed one pint to each of the negroes, except Arnold. As he was pulling out the fourth pint, the State's witness stepped up and remarked, "I will take that one." Thereupon the four men who were sitting on the ground fled. The accused remained a few minutes and ran off. The State's witness ran after him, but could not catch him. It does not appear whether they took the liquor with them, but it may be safely assumed that they did, in the absence of proof to the contrary. No money was seen to pass, but when the witness walked up, the accused had a dollar in his hand. A negro church association was in session at Grantville, and a large crowd was there. The transaction above described took place about 300 yards from the church. When arrested the accused had $1.30 on his person. He claimed that the whisky belonged to Arnold, that he brought it

to Arnold at the latter's request, for which service Arnold was to give him one of the pints. He further claimed that the dollar which he had in his hand had been given him by a woman with whom he lived, to be used in purchasing provisions.

Evidently the jury did not credit this rather lame explanation of the transaction. Just why, if the whisky belonged to Arnold, the accused should have given everybody except Arnold a pint of it and retained the fourth for himself is not made clearly to appear. It may be that the accused was acting as agent for Arnold in making a sale. If so, he is equally guilty. If the whisky was his, as the jury had a right to believe, then there were circumstances authorizing a legitimate inference that a sale was intended. A sale may be shown by circumstantial as well as by direct evidence, and it is not necessary that any particular price should be agreed on. *Smith* v. *State, 9 Ga. App.* 230 (70 S. E. 969). A sale on credit is as much a violation of the law as a sale for cash. *Finch* v. *State, 6 Ga. App.* 338 (64 S. E. 1007).

The secretive method employed, the dark night, the unusual place, the dollar in the hand, the flight of the four negroes, were all circumstances pointing very strongly to a criminal transaction, and the jury had a right to infer that a sale, rather than a gift, was intended.                                        *Judgment affirmed.*

RUSSELL, J., dissenting. The evidence against the defendant depends entirely upon circumstances, and to my mind they are too slight and inconclusive to authorize conviction. I do not think that circumstances of similarly frail character could have induced a verdict of guilty had the defendant been accused of a more heinous crime. No man can stand more strongly than I for the principle that the jury is the final arbiter as to the facts, and that their finding upon facts should be absolutely binding upon the courts; but the security of human liberty and the safety of the innocent, as well as the punishment of the guilty, depend upon the salutary rule that no one shall be convicted of crime solely upon circumstantial evidence, unless the only reasonable hypothesis which can rationally be deduced from the circumstances proved is inconsistent with innocence. Where a conviction rests upon circumstantial evidence alone, and the inference that the defendant is innocent is just as reasonable as that he is guilty, the defendant is entitled to an acquittal, and yet the prerogative of the jury to

find the facts is not in the least interfered with or abridged. In such an instance (and I think in the case at bar) the jury are as much the exclusive judges of the facts as in any other case, but as the law will not permit a jury to supply, in any case, facts that are not proved, so it is equally inexorable in refusing to allow a hypothesis or inference of guilt to be preferred to a supposition or hypothesis of innocence which is undeniably equally reasonable and equally well supported by the very testimony upon which the jury was obliged to base its finding. The crux of the matter, in a case in which guilt depends entirely upon circumstances which tend to prove by suggestion what there is a failure to show by direct proof, and where two equally reasonable theories, one of guilt and the other of innocence, are presented, and the jury find the defendant guilty, is that the error of the jury consists in disregarding the rule of law applicable to those criminal cases in which proof of guilt is wholly dependent upon circumstantial evidence. To set aside a verdict, either in a civil or a criminal case, because there was not sufficient evidence to authorize the finding, is not an abridgment of the right of the jury to pass upon the facts. It is likewise no interference with the prerogative of the jury for the court to set aside their finding where it is palpably plain (after viewing all the facts in the record in their strongest light) that they disregarded a cardinal rule of law, imposed for their guidance in weighing the evidence and giving it proper effect. There are some circumstances in the record besides those stated in the opinion of the majority of the court, but I shall not refer to them, because they may not have been credited by the jury, and I think it can safely be assumed that Arnold was a violator of the prohibition law. It can be suspected that he was the violator upon the occasion in question. The defendant, if an agent of Arnold in making an unlawful sale, would be equally guilty. In this latter statement of the opinion of the majority of the court I concur. I participated in the decisions in *Smith* v. *State,* supra, and *Finch* v. *State,* supra, and fully agreed to the rulings announced in each case, but the facts in those cases bear no resemblance to those in the present record. In the *Smith* case it was plain that the purchaser intended to pay and did pay for the whisky he got, and, as long as Smith never offered to return the money, it was equally plain that his insistence that he was not going to sell the whisky was a mere ruse.

Other evidence in the record showed that it was generally known in the community that whisky could be bought at Smith's house. Smith's case was not one of circumstantial evidence. The State's witness made out the case by direct proof, except the possible doubt as to the seller's intention to take the money, and this was removed by the fact that the accused never offered to return the money that the purchaser left in his presence on his table, and which he must reasonably be presumed to have appropriated to himself as payment for the whisky. In the *Finch* case we held merely that where the contract between the parties provided for future payment for whisky, the law was as much violated as if it were a cash transaction; for the reason that in either event it was a sale forbidden by law, and, if a sale be shown, the terms of purchase are immaterial.

To my mind the mere fact that a negro delivered three pints of whisky to three persons, when there is no evidence that he received any money for it, does not any more reasonably establish the proposition that he was selling the whisky, or was the agent of an undisclosed seller, than that he brought to them their own whisky that they had purchased from some one else, and was a mere errand boy, or that as their agent he had bought the whisky for them. It does not appear that the location was at all secret. If there is any place that is public during a meeting of a negro church association, it would be such a place as the crossing of the road and the railroad described in the evidence as being within 300 yards of the church where the meeting was in progress. The adjacent grounds were not in the woods, but were a cotton patch, and it was a "moonshiny" night. The marshal of Grantville swears that the railroad crossing in question is a very public crossing, and in sight of the church, at which there was a very large number of negroes. It is possible, of course, that the defendant may be guilty. The fact that he delivered three pints of whisky is suspicious. The fact that he happened to have as much as a dollar in the month of September is also another very suspicious circumstance, indicating that perhaps he got it from the sale of liquor. But the law does not authorize conviction upon suspicion, and in the evidence there is nothing to contradict the defendant's explanation that he had gone to a cotton patch and gotten the liquor for Arnold, where Arnold left it, upon Arnold's promise that he would give him a

pint of it for his trouble. The State's witnesses all testified positively that no money was paid at the time of the delivery, and that they did not hear anything said that indicated a sale. It is uncontradicted that the dollar was given to the accused by an old negro woman, to buy some domestic supplies.

It appears to me that in the absence of any direct evidence that there was a sale, the bare circumstance of one person's handing another a bottle of whisky (even if it had not been explained) was not sufficient to authorize the conclusion that the person handing the whisky to the other was selling it to him; and unless the theory of a sale is the most reasonable conclusion that can be drawn from the occurrence, the finding of the jury was unauthorized. To hold that the circumstance of one's handing another a bottle of whisky is prima facie sufficient to authorize conviction of a violation of the law would, in some instances, penalize a gift of wine or other intoxicating liquor where its use might be necessary as medicine, or required for sacramental purposes. I admit that the circumstance, colored by its surroundings, might authorize the conclusion that the delivery was made for the purpose of a sale, and not as a gift, but generally this would not be the case, because where either a guilty or an innocent intent may attach to an act, the law always prefers to ascribe an innocent intention. In a case where one delivers an intoxicant to another in a place evidently provided for the common and usual dispensing of such articles, I think it could very well be assumed that a sale was intended, but where it appears merely that the defendant handed three other parties a pint of liquor, and it is undisputed that no money was paid, and the explanation is given, and not denied, that he rendered this service in expectation of getting a pint for himself, I do not think the case is strong enough to say that the defendant is guilty beyond any reasonable doubt.